# Lerch, Appellant, *v.* Bard et al.

*Partnership—Principal and agent—Contract—Interpretation by parties —Promissory notes—Evidence—Question for jury.*

The articles of a partnership trading under the name of the American Plumbago Mining Company, stipulated as follows : "It is hereby further understood and agreed that no debts shall be contracted in the name of the American Plumbago Mining Company, unless the written consent of all parties hereto be first had and obtained. It is hereby further understood and agreed that William P. Bard, of the city of Reading aforesaid, shall be the manager of said copartnership or company, and shall have the general management of the said business, and he shall be authorized to sign all notes, checks, drafts, and other obligations, and to execute all papers under seal or otherwise necessary for conducting said business, and for the purpose of carrying out the provisions of this agreement." The evidence showed that an apparently large business was conducted by the partnership for over two years ; debts contracted by the manager and paid ; money borrowed from banks, notes given therefor in the partnership name by the general manager and from time to time renewed ; and that there was not, during the whole time the business continued, a single instance of the consent in writing of all the partners to contracting a single debt. The manager was not one of the partners. In a suit against the partnership on a note executed in the partnership name by the manager : *Held,* that it was a question for the jury whether or not the manager had authority to make and deliver such an instrument.

While there is an apparent contradiction between the two stipulations of the agreement, yet, interpreting the writing from its terms alone, it seems not unreasonable to construe it to mean that by the first stipulation the partners intended to restrict or limit the right of each other ; no partnership debts should be contracted by any one of the partners without the written consent of all ; debts necessary for conducting the business should be contracted by the general manager without such written consent. By MR. JUSTICE DEAN.

*Agent for borrower and lender --Delivery of note—Fraud—Embezzlement—Presumptions—Evidence.*

In this case, it appeared that the general manager, who was also an attorney at law, was the attorney of the payee of the note in question, by whom he had been employed to make an investment of the sum represented by the note. The note was dated October 1st. The payee gave the manager a check for the amount of the note on October 4th. About two weeks before, he represented to the payee that he had a good investment for the $3,000 and requested her to have the money ready by October 1st, which she was unable to do. After he had received the check, he told the payee the money was all right and she could have the papers at any time. After his death, the note was found in an envelope indorsed with the name of the payee in the pigeonhole of her initial in the vault of his law office. It appeared that two days after he received the check, the manager deposited it to his individual account, as attorney, in bank. He paid the interest on the note quarterly. *Held*, that the questions of the delivery of the note and whether or not the money was borrowed in good faith for the firm, were for the jury.

If there was no evidence to show that, when the manager took her money and delivered to her attorney the note, he intended to defraud his employers, she was not bound to prove he had not such intention; the presumption is he was acting honestly in both capacities and as the result the defendant got her check and she got their note. The presumption of innocence when he has made the deposit no longer exists in his favor, for he has committed an act significant of fraud; but the presumption of guilt does not necessarily extend back and determine an immoral condition of mind on the day he delivered the note. By MR. JUSTICE DEAN.

Argued Feb. 27, 1894.   Appeal, No. 20, Jan. T., 1894, by plaintiff, Annetta K. Lerch, from judgment of C. P. Berks Co., Feb. T., 1892, No. 51, on verdict for defendants, Geo. W. Bard, Samuel H. Kutz and Regina Boyer, trading as the American Plumbago Mining Co. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Reversed.

Assumpsit on promissory note. Before ENDLICH, J.

The facts appear by the opinion of the Supreme Court.

Plaintiff's points were as follows :

" 1. Under the defendants' articles of copartnership, William P. Bard was invested with power to borrow for the copartnership such moneys as were necessary for the carrying on of the business thereof, and was empowered, moreover, to give notes for the money so borrowed, and to sign the copartnership name to such notes." Refused. [1]

" 2. The jury may find from the written agreement, together

with the parties' course of dealing thereunder, that it was the intent of the parties to invest William P. Bard, their manager, with power at his discretion to borrow money for the copartnership and to give the copartnership note therefor." Refused. [2]

" 3. If the jury believe that William P. Bard signed the note in question, placed it among the plaintiff's papers in an envelope indorsed with the plaintiff's name, told her that he held the paper for her, and that she could come and get it when she pleased, and if they believe that it was the intention of William P. Bard that the said note should be regarded as having passed from his hands and into the custody of the plaintiff, it will be the duty of the jury to regard the note as having been duly delivered to the plaintiff with the same force and effect as if it had been physically placed in her hands." Refused. [3]

" 4. If the jury believe that William P. Bard in good faith borrowed the said sum of three thousand dollars for the defendants' copartnership, that he signed the note in suit therefor, and placed the same in the plaintiff's envelope which was indorsed with her name, and which contained her papers, that it was his intent that the note should be considered delivered to the plaintiff, and if they believe that under the terms of the agreement and the parties' course of dealing thereunder, William P. Bard was empowered at his discretion to borrow money for the firm, and give the firm's notes therefor, the verdict should be for the plaintiff, notwithstanding the defendants' manager after getting the money may have misappropriated it." Refused. [4]

Binding instructions for defendants were given. [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–5) instructions, quoting them.

*Cyrus G. Derr, Daniel H. Wingerd* with him, for appellant.— The question of the manager's authority to make the note in suit should have been submitted to the jury: Lerch v. Bard, 153 Pa. 573.

Delivery is a question of intent. Under the evidence in this case, the question of the delivery of the note should have been submitted to the jury: Smith on Contracts, 7th ed., pp. 6 and 7, notes ; Ruckman v. Ruckman, 32 N. J. Eq. 260 ;

Garnon v. Knight, 5 B. & C. 690 ; Purviance v. Jones, 16 Am. St. R. 319 ; Arrison v. Harmstead, 2 Pa. 193 ; Sheppard's Touchstone, 57, 58 ; Hill v. Hill, 10 N. E. R. 667.

If the above questions had been submitted to the jury and they had found the manager had authority to sign the note and had borrowed the money from plaintiff and delivered the note therefor, a presumption would have arisen that the money was borrowed in good faith, which presumption it would have been necessary for defendants to rebut : Schum v. R. R., 107 Pa. 12 ; Sissons v. Dixon, 5 B. & C. 669 ; Winlack v. Geist, 107 Pa. 301.

If defendants' manager was authorized to give notes to raise money for the business, it is of no consequence that he may have intended a misappropriation at the time of borrowing the money from plaintiff : 1 Parsons on Contracts, 7th ed., p. 46.

*George J. Gross, Jr.*, and *Isaac Hiester*, for appellees.—Defendants' manager had no authority to borrow money : Story on Part. § 102 ; Dowling v. Bank, 145 U. S. 512 ; Pease v. Cole, 53 Conn. 53 ; Dickinson v. Valpy, 10 B. & C. 128 ; Judge v. Braswell, 13 Bush, 67.

To make a delivery legal it must be absolute : Roberts v. Draper, 18 Ill. Ap. 167 ; Campbell's Est., 7 Pa. 101 ; Zimmerman v. Streeper, 75 Pa. 150 ; Little v. Willetts, 55 Barb. 125. In cases of bills and notes, delivery is essential : Kinne v. Ford, 52 Barb. 197. No valid delivery can be made after the maker's death : Clark v. Sigourney, 17 Conn. 511 ; or after an assignment for benefit of creditors : Girard Trust Co. v. Mellor, 156 Pa. 579.

While a note imports consideration, yet where evidence has been introduced to rebut the presumption which the note raises, the burden is upon the plaintiff to prove consideration : Dan. Neg. Inst. §§ 164, 167. The evidence here rebutted the prima facie case made by the production of the note. It showed that plaintiff intrusted the money to Bard as her attorney to invest for her, and that she did not lend it to Bard as manager of defendants ; also that Bard used the money for his own purposes, and that it never reached the company's treasury.

OPINION BY MR. JUSTICE DEAN, July 11, 1894 :

On the 24th of May, 1888, George W. Bard, Samuel H. Kutz

and Regina Boyer, by written articles, formed a copartnership, as the "American Plumbago Mining Company," to continue ten years, in the business of mining and manufacturing plumbago; each partner's contribution to the capital was one thousand dollars. In the articles are these stipulations: "It is hereby further understood and agreed that no debts shall be contracted in the name of the American Plumbago Mining Co., unless the written consent of all parties hereto be first had and obtained. It is hereby further understood and agreed that William P. Bard of the city of Reading, aforesaid, shall be the manager of said copartnership or company, and shall have the general management of the said business, and he shall be authorized to sign all notes, checks, drafts, and other obligations, and to execute all papers under seal or otherwise, necessary for conducting said business, and for the purpose of carrying out the provisions of this agreement."

Under this agreement, the active business was carried on by William P. Bard, until his death about the 4th of November, 1891, when it was wound up. The entire management and supervision were intrusted to him; George W. Bard had knowledge of occasional transactions of the manager; the other two partners seem not to have had any.

The manager was also a practicing attorney and maintained an office in the city of Reading. The plaintiff, Annetta K. Lerch, was his client; she employed him to make an investment of $8,000, money payable to her out of the estate of her deceased husband, and for that purpose, on October 4, 1890, she gave Bard two checks, dated the same day, payable to her order and indorsed by her, drawn by Robert Bland, executor of her husband, one for $5,000, the other for $3,000. The $5,000 was invested in real estate securities, which she got. About two weeks before she delivered the checks to him, he represented to her that he had a good investment for the $3,000, at six per cent, and requested her to have the money ready by October 1st. After she had given the checks to him, he said to her the $3,000 was all right, and she could have the papers at any time. He paid her the interest quarterly on the $3,000, by his own checks, except on one occasion, when he paid her in money. After the death of Bard, there was found in the vault of his law office, in pigeonhole L, a large envelope in-

dorsed on the outside "Annetta Lerch;" in this envelope were several mortgages assigned to her, and a note of Rehr & Fricker for $5,000, which represented the investment of the $5,000 check given him at the same time with the $3,000 check; also a smaller envelope, in which was a note as follows:

$3,000.                          READING, Pa., October 1, 1890.

One year after date we promise to pay to the order of Annetta K. Lerch three thousand dollars at lawful interest, without defalcation, value received.

American Plumbago Mining Co.,

WILLIAM P. BARD, Manager.

On this note, plaintiff brought suit against the partnership. The court, after hearing the evidence, peremptorily directed a verdict for defendant, and from the judgment entered on that verdict the plaintiff brings her appeal.

The note being produced by plaintiff at the trial, prima facie she has a right to a verdict for the amount of it. The burden is on defendants to establish, by the preponderance of evidence, a defence to it. This they undertake to do: (1) By a denial of authority to William P. Bard to make and deliver it. (2) They aver, if he had such authority, the evidence does not show such a making and delivery of the note to this plaintiff as renders them liable.

The authority of William P. Bard to borrow money for the partnership and deliver to the lender the notes of the partnership therefor, it still seems to us, under the evidence, was a question for the jury.

The written agreement provides that no debts shall be contracted in the name of the partnership without the written consent of all the partners. It is then provided that the manager shall have the general management of the business, and authority to sign all notes, checks, drafts, and other obligations necessary for conducting the business.

There is an apparent contradiction between the two stipulations. By the first, no debt whatever is to be contracted without the written consent of all the partners; by the second, the manager is authorized to sign all notes necessary for conducting the business. Interpreting the writing from its terms alone, it seems to us not an unreasonable construction of it is that, by the first stipulation, the partners intended to restrict or limit

the right of each other; no partnership debts should be contracted by any one of the partners without the written consent of all; debts necessary for conducting the business should be contracted by the general manager without such written consent. The juxtaposition of the two stipulations, the second immediately following the first, as if continuing to elaborate on the same subject, and to provide for any inconvenience from a too literal interpretation of the first, confirm this view. And this, from the evidence of George W. Bard, was the interpretation put upon the agreement by the partners and manager by their subsequent conduct, from the time the business commenced until the manager's death more than three years afterwards. Without attaching much weight to the opinion of George W. Bard, as to the meaning of the agreement, but taking the facts as testified to by him, there was not, during the whole time the business continued, a single instance of consent in writing of all the partners to contracting a single debt. Yet an apparently large business was conducted during that time; debts contracted by the manager, and paid; money borrowed from banks, notes given therefor in the partnership name by the general manager, and from time to time renewed. Many of these notes were indorsed, it is true, by George W. Bard and Kutz, but this, clearly, was not the written consent of all the partners, nor the written consent of any as intended by the agreement; it was mere indorsement in the course of business to facilitate discounts in bank. The manager, on other occasions, borrowed money, and gave the firm note without indorsement of either partner. This significant conduct, during this long course of business, certainly was evidence for the jury that both partners and manager interpreted the agreement as conferring on the manager authority to contract partnership debts in the partnership name, and give partnership notes therefor, without the formal written consent of all the partners.

The real question is not, to what extent is the partnership answerable to third parties from the act of one without express authority, but, what was his authority under this agreement, from its language, and as interpreted by the conduct of those who made it?

The language of the present Chief Justice, in pronouncing the opinion of this court, when the case was here before, 153

Pa. 573, is as applicable now as then : " The authority with‹ which the defendants thus invested their general business manager does not appear to be restricted or revoked by anything in the agreement that precedes or follows the clause above quoted. The next preceding clause appears to have been intended to operate merely as a restriction on the general authority of the partners themselves, and their subsequent course of action in devolving nearly everything on their manager, as appears by the testimony, is in harmony with that construction."

If Bard had authority to contract debts, and bind the partnership by note, then, under the peculiar circumstances attending the making and alleged delivery of this note, is the partnership bound for its payment ? That is the substantial contention between the parties ; not whether he had authority to make and deliver such an instrument, for that, in view of the agreement and the conduct of the parties under it, is hardly doubtful, although there is some evidence for the jury.

We regret the necessity for thus indicating an opinion on a question to be passed on by the jury, but, unfortunately, our language in the former case, in this particular, was perhaps not sufficiently explicit, and seems to have been misunderstood by the learned judge of the court below ; our desire is, if possible, to avoid a third trial here on the same question. Therefore we have endeavored to be as plain as possible, not with the expectation of convincing the learned judge of the court below, however desirable that may be, that his view of the law is wrong, but of convincing him of what our view is ; for we do not doubt, when he does comprehend it, he will cheerfully adopt it as the law of this case, even if it be out of accord with his individual opinion. Because, either we must concur in his judgment when we believe it wrong, or he must concur in ours when he thinks it wrong. Which shall defer to the judgment of the other, not because of the reasons therefor, but because of the judgment, is determined by section 3 of article 5 of the constitution of this commonwealth.

Assuming, then, a disputed fact, which is for the jury, that the manager had authority to make and deliver the note, there would be two further questions to be answered in the affirmative before plaintiff could recover. Was the note delivered to

her? Was the money paid to defendant? Any difficulty in arriving at a conclusion in either case arises from the fact that the attorney acting for her, and the manager acting for the partnership, were the same person. If there had been two distinct persons, one William P. Bard, manager, the other William P. Bard, attorney, no such dispute as we have before us would have arisen. The manager, having authority from defendant to receive the money, and make and deliver the note; the attorney, having authority to pay over to him the money, and accept the note, the acts of the respective agents would have been the acts of their principals. The possession of the note by plaintiff's attorney would have been her possession, and, in the absence of fraud at the time of delivery, conclusive of her title and right to payment. The possession of the money by defendant's agent would have been their possession, without regard to subsequent misappropriation by him. But the fact that the agent of both was the same person, has a tendency to make difficult of discernment the line between the acts of plaintiff's agent and defendant's agent.

Plaintiff had employed Bard as her attorney to invest for her the $3,000. As evidence that he had loaned it to defendants, there is their written promise to pay, in his, her attorney's possession, not only identified as hers by her name as payee, but in the vault of the attorney's office, in the place papers of clients with the initial of her name should be found; in an envelope, indorsed, too, with her full name, with other papers having no connection with this loan, and which were unquestionably hers. Being thus in her attorney's actual possession, that was her possession. She had a right to the physical possession of the paper, on demand, if it had honestly reached the pigeonhole in her attorney's office. It was either there honestly as a consummation of the business intrusted to him in the investment of her money; or he, acting dishonestly, as the manager of the partnership, put it there without possession of the money by the partnership preceding the delivery of the obligation. This possession is not a mere presumption in any other sense than that all facts, not mathematically demonstrable, are more or less presumptions; it is a fact proven by every circumstance indicative of a legal possession. That it bore date the 1st of October, and the money was only paid on the

4th by her, is not important. Prima facie, the note was de-
livered the 1st of October, the day of its date. By a previous
understanding, however, the transaction was to have taken
place on the 1st, but she was not able to furnish the money
until the 4th, which is a sufficient explanation of the slight
discrepancy in the dates of the note and check. When the
check was transferred to him for the $3,000, he said he would
use it as an investment which he "had for her." If, instead
of being in her attorney's office, with every mark of transfer
necessary to constitute a complete delivery to and possession
in her, the note had been found in his pocket book on his per-
son, there would have been no convincing evidence of posses-
sion by her, because it could have been reasonably argued that
it had not left the possession of defendants' agent. As her at-
torney, he would have had her money, but there would have
been nothing to indicate that it had passed to the defendants'
manager. And so if the note had been found in the office of
the Plumbago Company, the fact that she was the payee would
have warranted nothing more than an inference of an intention
to deliver it to her. Under either of the supposed cases, the
line could not have been drawn so as to distinguish between
his business act as manager, and his professional conduct as
attorney. But, taking the undisputed facts, as they here appear
in the evidence, what inference do they warrant?

In judging of the conduct of this man, who was acting in
this double capacity, until the contrary is shown, it must be
presumed his acts and intentions were honest; that he was
faithful to his duty to both parties, to the client who had in-
trusted him with her money for investment, and to the business
partnership that had confided to him its management. If there
had been two agents for these parties, instead of one, what
would have been the honest business and professional conduct
of each? The manager would have delivered to the attorney
the note, and, at the same time, the attorney would have
handed over to him the check. And this is the presumption
here; when the manager received the check dated the 4th of
October, he handed to the attorney the note dated the 1st of
October. Then the defendant had the money, and plaintiff
the obligation, and their rights and obligations were fixed.
We cannot presume that, at the date of the transaction on the

4th, when he received the check, the manager intended to defraud the partnership by appropriating the money; if that intention did exist, then the consciousness of the manager and the attorney being the same, the plaintiff would be affected with knowledge of the fraud, and be in collusion, by her attorney, with the wrongdoer; the fraud of her attorney would, in this transaction, be the fraud of his client. There must be a preponderance of evidence, however, that at this time Bard contemplated fraud; it will not be presumed. In the absence of evidence, it is said in 2d American Leading Cases, 706: " The conclusion to be derived from the cases would therefore seem to be, that there exists an undoubted presumption of fact against the commission of a fraudulent or wrongful action, which, in the absence of evidence on either side, should always induce a decision in favor of innocence, unless there is some better ground for the opposite opinion than a mere technical inference, founded on a failure to support the affirmative side of the issue." If there was no evidence to show that, when the manager took her money and delivered to her attorney the note, he intended to defraud his employers, she was not bound to prove he had not such intention; the presumption is, he was acting honestly in both capacities, and, as the result, the defendant got her check and she got their note.

But, two days after, he deposited the money to his individual account, as attorney, in bank; this is clearly evidence of misappropriation; but of whose money? If he was acting honestly, as is the presumption, when he received it, and there is no evidence to rebut the presumption, it was no longer his client's, but belonged to the defendants; had been theirs from the moment he placed their obligation in his client's envelope in the vault, and her check in his pocket. The presumption of innocence now, when he has made the deposit, no longer exists in his favor, for he has committed an act significant of fraud; but the presumption of guilt does not necessarily extend back and determine an immoral condition of mind on the day he delivered the note; that fact, with any other evidence bearing on the question, would be for the jury; of itself it would only show clearly that, however honest his purpose on the day he received the money for defendant, his mind had undergone a complete change; that now he contemplated that embezzlement

of his employers' money, which, in the course of three months, he effectually accomplished. But the plaintiff is not responsible for this, if the transaction was an honest one when consummated. She is affected with the fraudulent knowledge of her attorney at the time the papers were transferred, but not with the fraudulent conduct of defendants' manager two days afterwards. Because she loaned them money she is under no obligation to indemnify them against their manager's embezzlement of it. His services as her attorney, and her responsibility for his conduct in this loan, ended with the performance of his professional duty to her, and did not continue thereafter, so as to cover his duty as manager for defendant.

As is said in Pepper v. Cairns, 133 Pa. 114, " This case belongs. to that unfortunate class of cases in which one of two innocent parties must suffer from the fraud of a third."

In that case, Cairns wanted to borrow money and give as security a mortgage on his houses. To get the loan he applied to one Ruhl, a real estate agent, who had been in the habit of borrowing money on like security from Sergeant, trustee of the Pepper estate. On application to Sergeant, describing the property, he agreed to loan, on mortgage, $6,500, of which $3,500 was to be used in extinguishing a prior mortgage. He gave his check to Ruhl for the whole $6,500, and Ruhl delivered to him the mortgage previously obtained from Cairns ; he then appropriated the $3,500, in satisfaction of the prior mortgage, and embezzled the remaining $3,000. On scire facias on the mortgage, Cairns defended on the ground that at most Ruhl was the agent of both parties, and Cairns would not be chargeable with the money until notified that it had been paid to Ruhl ; that as Sergeant had put it into the power of Ruhl to embezzle the money he must bear the loss. The court below ruled in favor of plaintiff. This court held, affirming the judgment on appeal, that the question, which of two innocent parties should bear the loss, when the fraud had been made possible of accomplishment by Sergeant making the check payable to the order of Ruhl, instead of to Cairns, had no application. And the court says :

" The case turned upon the question of agency, which the double capacity of Ruhl required to be defined with extreme care. The whole evidence not only fails to show that Ruhl

was Sergeant's agent in handling the money, but, on the contrary, shows clearly that he received it as agent for Cairns, and in that capacity embezzled it. . . . Ruhl was Cairns's agent in the application for the money, and was to continue his agent in the use he made of it. When he brought the mortgage fully executed to Sergeant, the latter was justified in paying for it on delivery. He might have paid for it in cash, and his payment by check to Ruhl's order was not different in effect."

This case, like that, turns upon the question of the double agency, which requires to be carefully defined. While the facts in this case make the principle more difficult of application, on account of Bard having authority to both make and deliver the note, as well as receive the money for his principal; and authority as attorney, to retain the nominal custody of the note for his client until she called for it; nevertheless, when the boundary of the agency for each side is determined, the rights and obligations of the parties are clear.

As the learned judge of the court below gave a peremptory instruction to the jury to find for defendant, we have assumed throughout, as we were bound to do, the facts to be those of which the plaintiff gave any evidence. The fact that plaintiff did not know to whom Bard intended to loan her money, is not important. It is not denied that he received her $3,000 on the representation that he had an investment for it, or that he afterwards assured her he had invested it, and paid her the interest thereon quarterly. Her personal knowledge or ignorance of the borrower cannot affect her right under the obligation, if it was delivered to her attorney, and the check honestly received by defendant's manager. There is, on the facts, no question as to which of two innocent parties shall suffer because by negligence one made the fraud possible or easy of commission. If her attorney embezzled her money, she should lose it; if defendants' manager embezzled their money, they should lose it; blame attaches to neither; mistake to both, for both reposed confidence in one who was unworthy of it.

The plaintiff's 2d, 3d, and 4th prayers for instruction asked for a statement of the law in substantial accord with this opinion, and should have been affirmed.

The judgment is reversed, and venire facias de novo awarded.