## Bank of the United States v. Shetter.

*Check dated on Sunday—Delivery and ratification—Presumptions—Affidavits of defence—Judicial notice.*

1. The law presumes delivery to have been made when a negotiable instrument is in possession of another than the maker; it also presumes delivery to have been made on the date the instrument bears.

2. One to whom a check is negotiated by the payee an unreasonable length of time after it was made is not a holder in due course.

3. When an instrument bears date on Sunday and there is no proof that delivery was made subsequent to that date, the presumption is that it was made and delivered on the date the instrument bears.

4. One who is about to accept from the payee a check dated on Sunday, without further evidence of its delivery or subsequent ratification, is put upon notice of its infirmity and is bound to make reasonable inquiry as to delivery and ratification.

5. A check bearing date on Sunday, in the absence of evidence as to its making or delivery, is presumed to have been made and delivered on that day; the law does not presume a valid delivery or ratification on a subsequent secular day. This presumption prevails until rebutted by evidence. The law presumes a valid delivery when an instrument bears date on a secular day; when there is a making and delivery on Sunday, there is no presumption of ratification; it must be proved.

6. Formal defects in a plaintiff's statement are waived by an affidavit of defence to the merits; substantial defects are not waived.

7. An affidavit of defence, which raises a question of law by averring facts which require proof, does not waive the right to raise at the trial of the case the question of law raised by the affidavit of defence.

8. One presumption of law cannot be overcome by another presumption of law.

9. The plaintiff, a bank, offered in evidence a check dated Jan. 8, 1922, endorsed by the payee and deposited in plaintiff's bank more than three months after its date. The depositor checked against the deposit. The maker of the check refused payment and the check was protested. It was admitted at the trial that Jan. 8, 1922, was Sunday, and the trial judge took judicial notice of this fact. Evidence as to the signature to the check was offered and plaintiff rested. The trial judge entered a compulsory non-suit. On motion to take off the non-suit: *Held*, no error.

Motion to take off non-suit. C. P. Dauphin Co., June T., 1922, No. 285.

*Beidleman & Hull* and *Rosenberg & Rosenberg*, for plaintiff.

*George L. Reed* and *Snyder, Miller & Hull*, for defendant.

Fox, J., for the Court *in banc*, March 5, 1927.—This matter comes before us upon a motion to take off a compulsory non-suit.

At the trial of the case, the plaintiff submitted evidence showing that a check was drawn at Harrisburg, Pa., dated Jan. 8, 1922, in the sum of $3000, bearing the signature of the defendant as drawer, to the order of Barr Travis Co., Inc.; endorsed by the payee and deposited to the credit of the latter on April 24, 1922, in the Bank of the United States, against which deposit the

depositor checked; that, upon presentment, payment on said check was refused by the defendant and the check was protested. The plaintiff called the defendant, as if upon cross-examination, and a number of signatures were shown the witness which he admitted to be his, and these were admitted in evidence. It was admitted at the trial that Jan. 8, 1922, was a Sunday. The trial judge also took judicial notice of that fact. This was the substance of the evidence submitted by the plaintiff when the latter rested.

The court, therefore, had in evidence before it a check dated on a Sunday, endorsed by the payee and deposited by same over three months after its date in the plaintiff bank; that, upon presentment, the defendant refused payment on the said check and the same was protested; that the payee never reimbursed the plaintiff bank.

In the affidavit of defence, the defendant denied the execution of the check and declared the same to be a forgery; he further therein denied that the plaintiff was a holder in due course for the reason that the check was dated Jan. 8, 1922, which was a Sunday, and pleaded that the check was illegal because issued on Sunday in violation of the Act of April 22, 1794, 3 Sm. Laws, 177.

The plaintiff sets forth as its reasons for taking off the compulsory non-suit: (1) That the check, though drawn on Sunday, is enforceable in the hands of the plaintiff, who is a holder in due course; (2) that the defendant was barred from raising the defence of illegality at the trial because he had not interposed a demurrer to the plaintiff's statement.

At the argument of this motion, it was contended by the plaintiff that there is a presumption that the check was delivered by the defendant or ratified by him on a subsequent secular day, and that the burden is upon the defendant to show that the delivery of the check by him was not made, or that he did not ratify it, on such day.

Since the passage of the Act of Assembly of April 22, 1794, 3 Sm. Laws 177, commonly known as the Sunday Law, it has been well settled in this State that contracts made on Sunday are illegal and will not be enforced by our courts, unless ratified on a subsequent secular day. In the case of Chestnut v. Harbaugh, 78 Pa. 473, the court, amongst other things, said: "We have many authorities, among others, Baker v. Lukens, 11 Casey, 146, and Shuman v. Shuman, 3 Casey, 90, which rule that an executed contract is not void because made on Sunday. The Sunday law does not pronounce such contracts void, but, because they are contra bonos mores, the law will not lend its aid to execute such as are executory. Where, however, as in the present case, they have been executed by the parties, the law leaves them as it finds them." And in the case of Cook v. Forker, 193 Pa. 461, Mr. Justice Mitchell, at page 468, said: "Contracts made on Sunday are not void in the sense that they do not admit of ratification, though so long as they are executory the law will refuse to enforce them (Chestnut v. Harbaugh, 78 Pa. 473); and acts of ratification will make them new contracts which parties will be bound to perform: Uhler v. Applegate, 26 Pa. 140." The ground for so holding a contract to be illegal is the violation of the law by the parties thereto; it has been said: "It is a causa turpis." The parties to it are participes criminis and are in pari delicto.

But, as we have said, the plaintiff contends that, having introduced the check, although bearing date which was a Sunday, the law presumes that valid delivery or ratification was subsequently made, and the burden is upon the defendant to prove that no such delivery or ratification was made, and, as authority for this proposition, cites Brady on Bank Checks (2nd ed.), 47

etc., where, in section 29, it is said: "It is not necessary that the holder of a check, in bringing an action thereon, establish in the first instance by positive proof that the check was properly delivered by the drawer in order to recover. When a person's signature appears on a check and the check is no longer in his possession, the law presumes a valid and intentional delivery by him." And on page 48, in section 30, the author lays down the following: "But while in an action brought by the payee of a check, or an action by a remote party other than a holder in due course, the presumption of a valid delivery may be rebutted where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively presumed." These conclusions of the author, as he indicates in a foot-note, are drawn from section 16 of the Uniform Negotiable Instruments Act, which in our laws is found in the Pamphlet Laws of 1901, page 194. This section provides: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be. . . . But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." Section 52 of the same act provides that: "A holder in due course is a holder who has taken the instrument under the following conditions: '1. That it is complete and regular upon its face; 2. . . ; 3. . . ; 4. That, at the time it was negotiated to him, he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.'" Section 53 provides: "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

There can be no controversy as to the doctrine as laid down by the author cited by the plaintiff; it is, as he says, based on the Negotiable Instruments Act, supra. The law presumes delivery to have been made when the instrument is in possession of one other than the maker. But it also presumes delivery to have been made on the date the instrument bears. It also conclusively presumes a valid delivery to have been made by all parties prior to him, the holder in due course. This presumption refers to the delivery and not the date of delivery. But is the plaintiff, as it claims to be in the first reason in its motion, a holder in due course? Under the qualifications 1 and 4 of section 52 of the said act, we do not think it is. When it became possessed of the check, it was apparent that the check, being dated on Sunday, was, therefore, not complete and regular on its face; when it was negotiated to it, plaintiff had notice of the infirmity by reason of the date on the check. It also is not a holder in due course for the reason that the check was negotiated to it by the payee an unreasonable length of time after it was made. We think that when an instrument bears date which is a Sunday and there is no proof that a delivery was made subsequent to that day, the presumption is that it was made and delivered on the date the instrument bears. In the case of Claridge Rudolph v. Klett & Co., 15 Pa. 255, the Supreme Court, at page 259, said: "And, in the second place, a note given and accepted is always presumed to · have been given and accepted on the day it bears date, in the absence of all testimony or circumstance to give rise to a contrary presumption. Because

the date is put to it, like every other part, to evidence the truth of the trans-action." See, also, Lerch v. Bard et al., 162 Pa. 307, and First National Bank of Waverly, N. Y., v. Cyrus Furman et al., 4 Pa. Superior Ct. 415, page 425. In the case of Davis v. Cauffiel, 287 Pa. 420, the Supreme Court, at page 423, said: "The date on the stock certificate was not necessarily conclusive, how-ever, but was open to contradiction by proof that the actual delivery of the certificate was in fact made at a later time. Evidence to show the true date was not objectionable as being within the rule forbidding contradiction of a writing by parol evidence. It is always within the power of the parties to prove the actual date of the execution of a writing or its delivery, even though it be different from the date inserted in the writing itself: Finney's Appeal, 59 Pa. 398; Parke v. Neeley, 90 Pa. 52." In 3 Williston on Contracts, § 1706, at page 2990, the author says: "Though the fact that a note or other instru-ment is dated on Sunday is not conclusive proof that it was in fact executed on that day, since it takes effect only from delivery, yet the dating should put a purchaser on inquiry, and if in fact the instrument was made on Sun-day, he cannot be regarded as taking without notice," referring in foot-note 33, page 2989, to a large number of cases as authority.

The plaintiff cites what has been often called the leading case upon this sub-ject, viz., Cranson v. Goss, 107 Mass. 439, and at the argument relied upon that part of the paragraph at the top of page 443 which is as follows: "Even if the note bore date of a Sunday, however, that mere fact would not be con-clusive evidence that he took it with such notice; for, though dated on Sun-day, it might have been delivered on another day and so valid even as between the original parties: Hill v. Dunham, 7 Gray, 543; Hilton v. Houghton, 35 Me. 143." There is no controversy about this being the law. Our own cases which we have cited above, concur in this. But plaintiff has obviously failed to observe the prior portion of the same paragraph, which reads as follows: "A promissory note given and received on Sunday, and, therefore, void as between the original parties, might be equally void in the hands of a subse-quent holder who took it with notice of the original illegality. See Allen v. Deming, 14 N. H. 133; Holden v. Cosgrove, 12 Gray, 216; Davidson v. Lanier, 4 Wallace, 447."

One who is about to accept from the payee of the same a check dated on a Sunday without any further evidence of its delivery or subsequent ratifica-tion is put upon notice of its infirmity and he is bound to make reasonable inquiry as to delivery and ratification. The law, as shown by the authorities we have cited, presumes the check to have been made and delivered on the day it bears date. If he accepts it with this presumption, with no evidence of circumstance rebutting the same, he cannot recover, for he is no better than the party from whom he received it, who was a *particeps criminis;* his action at law on the instrument would be *ex turpi causa,* and the law will lend him no aid to recover what he may have given to the payee for it. In the case of Cranson v. Goss, 107 Mass. 439, the court, in part, said: "The ground upon which courts have refused to maintain actions on contracts made in contra-vention of statutes for the observance of the Lord's Day is the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction."

The general principle was long ago stated by Lord Mansfield, with his usual completeness and felicity of expression: "The objection that a contract is immoral or illegal, as between the plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that

the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff; by accident, if I may so say. The principle of public policy is this: *Ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own statement or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it, for when both are equally in fault, *potior est conditio defendentis*: Holman *v*. Johnson, Cowp. 341, 343."

The rule, as evidenced by the trend of authorities, we think is the fact that negotiable paper was executed on Sunday is not a defence against a *bona fide* holder for value without notice where there is nothing on the face of the instrument to indicate that fact; but when the holder receives the instrument with notice that it was made and delivered on Sunday, without anything further, the law will not aid him in a recovery: 8 Cyc., 48, and cases there cited, and 3 Ruling Case Law, 207, and cases there cited.

We are of the opinion that a check bearing date which is a Sunday, in the absence of any other evidence as to its making or delivery, is presumed to have been made and delivered on that date and day and the law does not presume a valid delivery or a ratification of the check by him on a subsequent secular day. The former presumption prevails until rebutted by evidence. The law, of course, does presume a valid delivery where the instrument bears date on a secular day. Where there is a making and delivery on Sunday, there is no presumption of ratification; it must be proved.

The plaintiff also contends that the defendant in his affidavit of defence raised this question as one of law, and, having gone to trial, waived the same and could not raise it at the trial. In the affidavit of defence, he averred, in paragraphs 3 and 11, in substance, that the check bears date Jan. 8, 1922, which was a Sunday, and, therefore, illegal, because it was in violation of the provisions of the Act of April 22, 1794. This was an averment of fact which raised a question of law, but under the law it is still left open for proof on the subjects, viz., the date of making and of delivery and also of ratification on a subsequent secular day. A demurrer as to the illegality of the instrument or this reason could not have been sustained. There is another reason why his contention cannot be sustained. In the case of Irwin *v*. Weikel, 282 Pa. 59, the Supreme Court, at page 262, said: "The true rule would seem to be that formal defects in a plaintiff's statement are waived, while substantial defects therein are not, by ignoring the provisions of the statute above referred to and filing an affidavit of defence to the merits." The defect averred is a substantial one.

The burden was upon the plaintiff to make out his case by the fair weight of the credible evidence. It offered in evidence a check bearing date a Sunday and nothing further with respect to delivery and ratification. The instrument was illegal on its face and, in the absence of any further evidence on this phase of the case on the part of the plaintiff, the defendant could not be called upon to prove that there was not a valid delivery of this check or that there was not a subsequent ratification of it. On the other hand, we think the burden was upon the plaintiff to prove the affirmative of the proposition. The date of the check raises a presumption that the check and delivery thereof

Bank of the United States *v.* Shetter.

were made on that date and that presumption could not be overcome by another presumption, to wit, that there was a valid delivery of the same subsequent to the date the instrument bears. Such a presumption can only arise where the instrument does not appear upon its face to be illegal or infirm.

Wherefore, we are of opinion that the trial judge committed no error in granting the compulsory non-suit as moved for by the defendant and the motion to take off the same must be refused.

And now, March 5, 1927, upon due consideration, the motion to take off the compulsory non-suit as moved for by the plaintiff is hereby refused and overruled.

From George R. Barnett, Harrisburg, Pa.