SMITH'S ESTATE

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 11049.

United States Court of Appeals
Third Circuit.

Argued Sept. 17, 1953.
Decided Nov. 13, 1953.

350

Robert R. Ross, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

We are involved with the alimony sections of the Internal Revenue Code and the questions concern deductions by the taxpayer for the year 1947.[1] The facts of the case were stipulated by the parties and the stipulation was adopted by the Tax Court as findings of fact. The Tax Court denied all of the items in the taxpayer's petition for redetermination of income and the case is brought here on appeal.

Frank Charles Smith in 1946 signed an agreement with his then wife looking to a property settlement as an incident of impending divorce litigation. A divorce decree was granted Mrs. Smith on March 5, 1947. The decree did not incorporate the provisions of the agreement, but there is no denial that the agreement was incident to the divorce and so comes within the provisions of the statute,[2] and the Tax Court so found.

The case turns upon the provisions of 22(k) and 23(u) of the Internal Revenue Code.[3] The statute quite evidently covers two types of situations in the allocation of income for tax purposes between divorced parties. If there is a lump sum payment promised in the nature of a property settlement this is not taxed to the wife whether the money is paid in one payment or spread over a period of years. The latter is an "installment" payment. On the other hand, if the husband agrees or is ordered to pay the wife a sum of money as support regularly for an indefinite time that is a "periodic" payment. The income therefrom is taxable to the wife and payments constitute a deduction for the husband.[4] All of this is easy if said rapidly. But when the general rules are set down on the varying provisions of separation agreements difficult problems arise in determining whether a given payment is to be assigned to the installment or periodic class. This question constitutes the principal and most interesting problem in this appeal.

According to the terms of the contract, the pertinent parts of which are

---

1. Frank Charles Smith, the taxpayer, has since died. His estate is represented in this litigation by his executors. For clarity we shall still refer to him as the "taxpayer" as though he were living.

2. See note 3 infra.

3. "In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband * * *. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments * * * except that an installment payment shall be considered a periodic payment * * * if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. * * *" 26 U.S.C.A. § 22(k) (1948).

"In computing net income there shall be allowed as deductions * * * In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection." 26 U.S.C.A. § 23(u) (1948).

4. See Norton v. Commissioner, 16 T.C. 1216, affirmed, 8 Cir., 1951, 192 F.2d 960.

set out in the margin,[5] the taxpayer agreed to pay his wife $25,000 in ten equal semi-annual installments. We can dispose of one of the two $2,500 payments for which a deduction is claimed by pointing out that there is no proof that it was made subsequent to the divorce decree and the statute specifically requires that "payments * * * [be] received subsequent to such decree * * *."

As to the other $2,500 payment the taxpayer, after having conceded its taxability in his main brief, now urges that he is entitled to a deduction there-

5. "First: That the husband shall pay to the wife the sum of Twenty-five thousand ($25,000.00) Dollars in ten (10) equal semi-annually installments, that is to say: The sum of Two thousand five hundred ($2,500.00) Dollars on the 15th day of February, 1947; the further sum of Two thousand five hundred ($2,500.00) Dollars on August 15th, 1947; the further sum of Two thousand five hundred ($2,-500.00) Dollars on February 15th, 1948; the further sum of Two thousand five hundred ($2,500.00) Dollars on August 15, 1948; the further sum of Two thousand five hundred ($2,500.00) Dollars on February 15th, 1949; the further sum of Two thousand five hundred ($2,500.00) Dollars on August 15th, 1949; the further sum of Two thousand five hundred ($2,500.00) Dollars on February 15th, 1950; the further sum of Two thousand five hundred ($2,500.00) Dollars on August 15th, 1950; the further sum of Two thousand five hundred ($2,500.00) Dollars on February 15th, 1951; and the further sum of Two thousand five hundred ($2,-500.00) Dollars on August 15th, 1951.

"Second: That the husband shall pay to the wife in addition thereto, the sum of Three hundred ($300.00) Dollars every month, beginning on the 1st day of December, 1946, payable on the 1st day of every month hereafter for a period of five (5) years, beginning with the day of the first payment as aforesaid.

"Third: That the husband shall pay in addition thereto to the wife, the sum of One hundred ($100.00) Dollars on the 1st day of December, 1951, and on the 1st day of each calendar month thereafter, a monthly sum or payment of One hundred ($100.00) Dollars, for and during the term of the remainder of the natural life of the wife.

"Fifth: The husband hereby agrees to name his wife beneficiary of certain life insurance policies. * * * The provision in this paragraph of the husband 'never to change the beneficiary thereof' is hereby construed by the parties hereto to mean 'never to change the beneficiary during the lifetime of the wife, and, in the event the wife should die before the husband, then, all her interest in said pol-

icies shall cease and the husband, shall have the right in such case to change the beneficiary'. * * * And he does hereby assign and set over to her, all his right, title, claim and interest herein and agrees never to change the beneficiary thereof, and to pay the premiums as and when they become due on the said policies, and to keep the said policies in full force and effect at all times in the future.

"Eighth: The husband hereby agrees to furnish the said wife, during the term of her natural life, a new automobile of standard make every year, and to maintain the same in good running repair as necessary by reason of ordinary wear and tear.

"The wife hereby agrees to turn in and surrender to the husband her used automobile every time he furnishes her a new car.

"Ninth: All and each of the payments as aforesaid shall be made by the husband to the wife, free of any Federal Income Taxes to herself. That is to say, that in addition to the face value of the payments provided as above, the husband shall pay any and all Federal Income Taxes due thereon.

"Tenth: The husband shall have the right to accelerate or anticipate any of the payments due hereunder at any time, and in that event, an allowance shall be made to him amounting to Four (4%) per cent annually on payments so made in advance of the due date.

"Eleventh: It is agreed between the parties hereto that in the event of the death of the husband, during the lifetime of the wife, all payments provided hereunder shall cease, except the payments due under the life insurance policies aforesaid.

"Twelfth: And likewise, upon the death of the wife or upon her remarriage.

"Fourteenth: This agreement shall be in full settlement, adjustment and compromise of all property questions and rights between the husband and wife.

"Fifteenth: The payment by the husband to the wife of the sums herein provided shall be a complete discharge by the husband of all liability to support and maintain his wife."

for under the case of Baker v. Commissioner, 2 Cir., 1953, 205 F.2d 369. We disagree. The Baker case is important and will be discussed below. But we find nothing in it to change what seems to us an obvious installment payment under this contract to a "periodic" payment. Indeed, so to urge on the part of the taxpayer seems to us likely to kick the props from under what we think is an effective argument for the deduction of monthly payments discussed below.

Reference to the separation agreement will show that in addition to the $25,000 the husband further agreed to pay the wife $300 monthly for five years and $100 monthly thereafter for her life or until her remarriage. Nine of these $300 payments were made subsequent to the divorce decree in 1947. Taxpayer claims a deduction of $2700 therefor.

The Commissioner takes the position that since the sum total to be paid by the husband was mathematically calculable, payments made in liquidation of the agreement are "installment" payments not taxed to the wife and for which the husband gets no deduction. This was the view of the Tax Court and is supported by a line of decisions in that court. Whether individual cases can be distinguished does not matter; the Tax Court judge in this case was perfectly right in relying on the theory supported by previous Tax Court decisions. Steinel v. Commissioner, 1948, 10 T.C. 409; Estate of Orsatti v. Commissioner, 1949, 12 T.C. 188; Casey v. Commissioner, 1949, 12 T.C. 224.

Opposed to this line of Tax Court decisions is the Second Circuit's decision in Baker v. Commissioner, 1953, 205 F. 2d 369. All the Commissioner can do about this case is to say it is wrongly decided. We do not think it is wrongly decided. In the first place by the terms of this agreement, made between the Smiths prior to their divorce, there were three contingencies, the occurrence of any one of which would have relieved the taxpayer or his estate from the obligation to make these monthly payments. First, if the husband died he was no longer liable. Second, if the wife died the husband was no longer liable. Third, if the wife remarried the husband was no longer liable. The promise to pay was not therefore one which could be mathematically calculated as a certain obligation of the husband.

Furthermore, we do not read into the statute a requirement that the terms of payment must run over ten years in order that this become a periodic contract within the terms of the Act. It seems to us that this set of facts calls for a fairly clear application of the distinction indicated in section 22(k), which provides for both the lump-sum payment, on which it would be quite unfair to tax the wife, and the month-to-month kind of payment for support, in which the Congress was seeking relief for alimony-paying ex-husbands. Each type was included in this contract. We think that the husband was entitled to a deduction by the terms of the statute for the $300 monthly he paid his former wife in 1947 by the terms of their agreement. In other words, he is entitled to the deduction of $2,700 which was denied him.

The taxpayer puts forth other items claimed for deductions which we can dispose of briefly.

A. Pursuant to the terms of the contract he says he paid $400 in insurance premiums in the year 1947. There will be no deduction for these for two reasons. One is that it is not shown that he paid the money subsequent to the divorce decree. That, itself, is enough. But in addition, there is an equally strong reason for denying deduction because by the terms of the contract this insurance money went to the wife only if she outlived her husband. The beneficial ownership of the policy was in her subject to this very important contingency. We think this was enough to preclude deduction of payments no matter when made. See Blumenthal v. Commissioner, 3 Cir., 1950, 183 F.2d 15.

B. By the terms of the agreement the husband was to furnish a new car to the wife each year. He claims $500 for a car in 1947. We do not have to decide the interesting question whether furnishing a new car constitutes a periodic payment. The taxpayer does not show that he furnished the car after divorce, if indeed a car was furnished. There is, therefore, no basis for deducting this item.

C. Taxpayer claims a deduction for $2,000 legal fees paid to counsel who conducted negotiations and prepared the separation agreement above set out. This item is not deductible. It is claimed under section 23(a)(2) of the Code as a nonbusiness expense. It may well be that the legal profession would be glad to see a provision permitting deduction of all legal fees. But that is not the present law. An enormous number of legal fees are paid to prevent pecuniary losses, **for** example, money paid for the defense of a party who has injured another in driving his motor car. But as the Supreme Court has recently pointed out, the mere fact that a lawyer is retained to protect one against a pecuniary claim is not sufficient to make the legal expense deductible. See Lykes v. United States, 1952, 343 U.S. 118, 125, 72 S.Ct. 585, 96 L.Ed. 791, rehearing denied 343 U.S., 937, 72 S.Ct. 768, 96 L.Ed. 1344. We think that there is little doubt about non-deductibility here especially in view of the latest authority on the subject. In Howard v. Commissioner, 9 Cir., 1953, 202 F.2d 28, it was held that petitioner could not deduct the legal expenses of defending actions brought by his divorced wife for money awarded her by the divorce decree. There, the reason for the expenditures was the desire to avoid liability. Here, even that purpose may not have existed, for Pennsylvania law makes no provision for alimony in an absolute divorce.[6] Baer v. Commissioner, 8 Cir., 1952, 196 F.2d 646, permitted the husband to deduct the expenses of securing a settlement when it was shown that, upon divorce, his wife would be entitled to substantial alimony and that her claims might force her husband to relinquish his controlling interest in a corporation of which he was president. In the Howard case, the Ninth Circuit correctly distinguished Baer on the grounds that Mrs. Baer's demands threatened her husband with the loss of his chief source of income. We think that distinction is applicable here.[7]

D. The taxpayer claims a $2,300 deduction for an income tax payment made on behalf of his former wife in 1947. By the terms of the agreement the husband was to make the payments stipulated in the contract free of federal income tax to the wife. The finding with regard to this matter for 1947 reads:

"On December 16, 1947, the decedent, with the intention of complying with paragraph 'Ninth', drew a check to the order of Mabel Q. Smith for the amount of $2,300. This check was not cashed until January 10, 1949."

We find it impossible to sustain this claim as a deduction for 1947. Mrs. Smith, according to the facts, filed no return for 1947. Indeed, what she owes for 1947 cannot be determined until the end of this litigation. The most that her former husband could have done was to make a guess at her tax liability and advance the payment to meet it. We do not wish to be unduly technical in applying the language which parties employ in making stipulations of fact, but we cannot take the jump that a check which was drawn on December 16, 1947, and not cashed until January, 1949, was delivered in 1947. It is true that there are

6. See Pa.Stat.Ann. tit. 23, §§ 45–47 (Purdon 1930).

7. See also Jergens v. Commissioner, 1951, 17 T.C. 806. It may or may not be that a different result should obtain when the deduction is claimed for the wife's expenses in securing the settlement. See Gale v. Commissioner, 1949, 13 T.C. 661, affirmed on other grounds, 2 Cir., 1951, 191 F.2d 79; LeMond v. Commissioner, 1949, 13 T.C. 670.

general statements to the effect that there is a presumption of delivery on the date which an instrument bears. See, e. g., Morgan v. Burrow, Miss. 1894, 16 So. 432; Lerch v. Bard (or Lerch v. American Plumbago Min. Co.), 1894, 162 Pa. 307, 29 A. 890; Malloy v. Pierson, 1918, 37 Cal.App. 486, 174 P. 98; Bank of the United States v. Shetter, 1927, 9 Pa. Dist. & Co. 643. However, these cases involve such questions as the validity of instruments delivered on Sundays and the proof of delivery when the holder sues on the note. The law of negotiable instruments states no such presumption although it does provide for a conclusive presumption of delivery of an instrument to the holder in due course, Negotiable Instruments Law § 16. That is beside the point here. If this instrument had in fact been delivered in 1947, that fact was one capable of proof by the taxpayer or his representative. We think it would be an undesirable tax rule to let the mere date on an instrument, in the absence of showing of the time it was delivered, carry with it a conclusion that the instrument was delivered on the date put upon it by the drawer.

The decision of the Tax Court will be affirmed upon all the claims except that for the $2,700 deduction for the monthly payments in 1947. As to that, the decision will be reversed.

HASTIE, Circuit Judge (concurring).

I state a separate view of the error in the Tax Court's disposition of payments in the amount of $2700 made by the taxpayer under the second paragraph of his agreement with his estranged wife.

The opinion of this court adopts the rationale of Baker v. Commissioner, 2 Cir., 1953, 205 F.2d 369, rejecting a not unreasonable interpretation of Section 22(k) of the Internal Revenue Code which the Tax Court has followed for several years. Steinel v. Commissioner, 1948, 10 T.C. 409; Estate of Orsatti v. Commissioner, 1949, 12 T.C. 188; Casey v. Commissioner, 1949, 12 T.C. 224; Fleming v. Commissioner, 1950, 14 T.C. 1308. And see Herbert v. Riddell, D.C. Cal. 1952, 103 F.Supp. 369, 387. I am not sure that I would follow the Baker case. But I am sure that the Tax Court reached an incorrect result in the present case for a reason which has nothing to do with the new doctrine of the Baker case.

Any rational reading of the first three paragraphs of the agreement in this case must reveal that, while the first paragraph is the lump sum property settlement type of provision, the second and third paragraphs are intimately related in such way that they together provide continuing regular monthly payments of money for current maintenance and support, albeit in decreased amount after five years, to the wife for life. It is not disputed that payments of this latter type are "periodic payments" within the meaning of Section 22(k).

The Tax Court avoids this conclusion by refusing to read the second and third paragraphs together, but rather viewing the second paragraph as an isolated undertaking to pay a sum certain within five years. I think this refusal to read and interpret consecutive provisions in relation to each other results in an unreasonable disregard of the clear meaning of the document. I would require that the two paragraphs be read together, thus necessitating a construction contrary to that of the Tax Court, but without reaching the problem of the Baker case.

On all other points I agree without reservation with Judge GOODRICH'S analysis.