**Downingtown Farmers Market and Auction Co. v. Rose**

*Albert Momjian* and *Abrahams & Loewenstein,* for plaintiff.

*Lester H. Novack* of *Cohen & Novack,* for defendant.

KELLEY, J., May 12, 1971.—This case came before the court for trial without a jury on January 25, 1971. After a seven-day trial, the court found for plaintiff in the amount of $32,504.21. No motions for new trial or judgment non obstante veredicto were filed; nor were any exceptions filed. Instead, defendant appealed directly to the Superior Court. The action was based on a written lease agreement entered into between the parties on May 25, 1955, concerning premises known and operated as Downingtown Farmers Market and Auction Co. in East Coln Township, Chester County. The lease was for a term of 10 years with a rental of $10,000 per month. The agreement provided, inter alia, in paragraph 8(b) that defendant-lessees would:

". . . Keep the demised premises clean and free from all ashes, dirt and other refuse matter; replace all glass windows, doors, etc. broken; keep all waste and drain pipes open; repair all damage to plumbing and to the premises in general; keep the same in good order and repair as they are now, . . ."

It is important to note that the standard clause, excepting "reasonable wear and tear," was expressly deleted from the uniform lease form.

This paragraph further provided that "Lessee agrees to surrender the demised premises in the same condition in which Lessee has herein agreed to keep same during the continuance of this lease."

Paragraph 8(h) provided that lessee shall be "responsible for the condition of the pavement, curb, cellar doors, awnings and other erections in the pavement

during the term of this lease; shall keep the pavement free from snow and ice. . . ."

In section 9(d) the parties also agreed that "all alterations, improvements, additions, or fixtures whether installed before or after the execution of this lease, shall remain upon the premises at the expiration or sooner determination of this lease and become the property of Lessor, unless Lessor shall have given written notice to Lessee to remove the same, in which event Lessee will remove such alterations, improvements and additions and restore the premises to the same good order and condition in which they now are. Should Lessee fail so to do, Lessor may do so, collecting, at Lessor's option, the cost and expenses thereof from Lessee as additional rent."

The foregoing provisions are contained in the printed "Uniform Lease No. 50" form. In addition, a typed "Rider" was incorporated in and formed part of the agreement. Paragraph 29 of this "Rider" provided "Lessee shall be responsible for the condition of the driveways, parking area, and any other areas covered by the within lease. Lessee shall keep and maintain same in good order, condition and repair and free from snow and ice."

During the trial, on January 28, 1971, defendants moved for summary judgment on the ground that Lee Land Company, a related corporation, and not a party plaintiff, paid all of the bills to repair and restore the premises and that plaintiffs, therefore, were not the proper parties because they had suffered no loss.

The fact that Lee Land Company paid the actual bills for restoration is not fatal to plaintiffs' claim. Plaintiffs were liable to Lee Land for the funds that company advanced. Lee Land was the owner of the premises in question, having leased the property to plaintiffs and could hardly be said to have been a vol-

unteer. Liability for the restoration of the premises was clearly that of plaintiffs. For the court to find otherwise would be violation of the spirit if not the letter of Pennsylvania Rule of Civil Procedure 126 which states that "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." The motion for summary judgment was, therefore, denied.

Defendants also moved for directed verdict, which the court may enter only in a clear case concerning whose facts the minds of reasonable men cannot differ. Where "the facts are admitted or are so . . . conclusively proved as to admit of no reasonable doubt, it is the duty of the courts to declare the law applicable to them": Anthony Wayne Ter. H. Assn. v. Bedio, 186 Pa. Superior Ct. 335. If, "admitting every fact and circumstance to be true, plaintiff has entirely failed to make out his case, it is not error to instruct the jury to find for the defendant: Smith, Admr., et al. v. Ehler, 366 Pa. 111. However, where the conduct of the parties is inconsistent, and there is a conflict of evidence upon material facts, the case is not one in which a verdict may be directed: P. L. Encyc. Vol. 38, p. 213, Lerch, Appellant v. Bard, et al., 162 Pa. 307. In the instant case, the record discloses myriad issues of fact and conflicts of testimony, particularly on the question of damages, which are too numerous to enumerate. Reasonable minds might well have differed as to each issue of fact. For this reason defendants' motion for a directed verdict was denied.

According to the lease agreement, defendants were to keep the premises clean, replace all broken glass

and doors and repair all damages to the premises. The standard clause in the "Form 50" lease excepting "reasonable wear and tear" had been expressly deleted. Defendants further agreed to surrender the premises in good condition and be responsible for the condition of the pavement, driveways and parking area. Section 9(d) of the contract provided that all improvements, additions and fixtures should become the property of the lessor at the termination of the lease. No question was raised at trial as to the validity of these provisions and after due consideration, the court found absolutely no reason why the terms of this agreement, negotiated between two experienced and astute businessmen represented by counsel, should not be fully enforced. The court considered all items of damage alleged by plaintiffs and found defendants to be liable for breach of their covenants as follows:

| | | |
|---|---|---:|
| 1. | Replacement of broken glass | $ 550.11 |
| 2. | Replacement of Coolair Units | 3,500.00 |
| 3. | Roof repair | 3,442.00 |
| 4. | Repaving parking lot and roadways | 12,591.21 |
| 5. | Replacement of vestibules | 2,383.21 |
| 6. | Cleaning and removal of trash | 364.50 |
| 7. | Lumber | 66.53 |
| 8. | Replacement of the heating system | 3,969.00 |
| 9. | Repairs of the electrical system | 3,800.00 |
| 10. | Replacement of transformers | 833.00 |
| 11. | Miscellaneous carpentry repairs | 1,004.75 |
| | Total Damages | $ 32,504.21 |

The written lease agreement also provided for interest and counsel fees of five percent.

Defendants sustained above liability by failing to repair all damage to the premises in general, by failing to keep the premises and roof of the building in good order, by failing to replace all broken glass windows and doors, by failing to maintain the pavement, drive-

ways and parking areas, by removing from premises various alterations, additions, improvements and fixtures, and by failing to surrender the premises in the same condition in which they agreed to keep the same during the continuance of the lease. Where the covenant to repair on the part of the lessee is expressed unconditionally, the lessee must restore the premises to their former state, even though they have fallen into disrepair without fault of the lessee: Platt et al. v. Philadelphia, 183 Pa. Superior Ct. 486 (1957). Where, as in the present case, the parties have by their express contract not limited their obligation, the law will not imply a limitation: Hoy v. Holt, 91 Pa. 88. It is clear there was an express covenant to repair all damage regardless of any negligence or fault on the part of defendant lessees.

For the reasons stated above, this court found in favor of plaintiffs. A finding for plaintiffs under the circumstances of this case necessitated a finding for plaintiffs on defendants' counterclaim, since the theory of the counterclaim depended on impropriety and maliciousness of plaintiffs' actions, which actions the court found to be proper and justified.