Madyo A. Poletti and Marian Poletti, et al. [1] v. Commissioner. Poletti v. Commissioner
Docket Nos. 74752, 74753, 83552.
United States Tax Court
T.C. Memo 1962-266; 1962 Tax Ct. Memo LEXIS 40; 21 T.C.M. (CCH) 1415; T.C.M. (RIA) 62266; November 16, 1962
*40 E. H. Tenney, Jr., Esq., 506 Olive St., St. Louis, Mo., for the petitioners. Dean E. Sharp, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioners and additions to tax as follows for the indicated years: Addition to Tax
Sec. 294(d)(2),
Petitioner
Docket No.
Year
Deficiency
I.R.C. 1939
Madyo A. Poletti
74753
1951
$ 6,227.00
$ 399.67
Madyo A. Poletti and Marian
74752
1952
9,390.26
751.04
Poletti
1953
6,222.06
547.19
Sec. 6653(a),
I.R.C. 1954
Madyo A. Poletti and Marian
83552
1954
2,686.33
134.32
Poletti
1955
7,953.56
397.68
1956
11,437.01
571.85
1957
26,198.21
1,309.91
Issues presented by the pleadings are the correctness of the respondent's action: (1) In disallowing a portion of the deductions taken by the petitioners for business travel, business publicity, promotion, and promotional entertainment for 1951 through 1957, (2) in disallowing a portion of the deductions taken by petitioners for automobile expense and depreciation of automobiles *41 for 1951 through 1957, (3) in disallowing a portion of the deductions taken for salaries for 1951 through 1953, (4) in disallowing a portion of the deduction taken for miscellaneous office expense for 1953, (5) in disallowing a portion of a deduction taken for medical expenses for 1954, (6) in disallowing a portion of a deduction taken for loss on sale of automobile for 1957, (7) in disallowing for 1952 a portion of a deduction taken for office supplies, (8) in disallowing a deduction taken for a bad debt for 1952, (9) in disallowing a deduction taken as a loss for abandonment of goodwill for 1955, (10) in disallowing a portion of deductions taken for telephone expense for 1951 and 1953, (11) in disallowing a deduction taken for advertising expense for 1953, (12) in disallowing a deduction taken for loss on sale of two automobiles for 1955, and (13) in determining additions to tax for 1951 through 1957. In a stipulation filed subsequent to the trial herein, the petitioners conceded issue Nos. 7, 8, and 9 and respondent conceded issue Nos. 10, 11, and 12, thereby leaving for determination issue Nos. 1 through 6, and 13. General Findings of Fact Subsequent to the trial herein the *42 parties filed a stipulation entitled "Amended Stipulation of Facts," sometimes hereinafter referred to as the amended stipulation, which recited that it was to be substituted for all previously filed and unfiled stipulations of fact and supplementals thereto. All of the facts contained in such amended stipulation are found as stipulated. Madyo A. Poletti, sometimes hereinafter referred to as the petitioner, filed his Federal income tax return for 1951 with the collector for the first district of Missouri. Petitioner and Marian Poletti, husband and wife, filed joint Federal income tax returns for the taxable years 1952 through 1957 with the director or district director, as the case might be, in St. Louis, Missouri. Throughout the years 1951 through 1957 the petitioner conducted as a proprietorship an employment agency business in the St. Louis, Missouri, area. The business was conducted under various names, among which were Mapco, Barbara Hutton, Reference Association, Employment Associates, Employers, and Cadillac. On or about May 1, 1954, the petitioner acquired an employment agency in Chicago, Illinois, which he operated until about the middle of December of that year when he *43 discontinued it. At or about the time of the discontinuance of that agency the petitioner entered into an arrangement with the owner of an agency in Chicago, known as the Cardinal Agency, whereby there was an interchange of male applicants in the petitioner's St. Louis offices with the Cardinal Agency and vice versa, and the fee received from the placement of such applicants was divided equally between the owner of Cardinal Agency and the petitioner. This arrangement continued in effect until possibly sometime in 1956. In June 1957, the petitioner acquired an employment agency then operating in Los Angeles, California, under the name of Bliss & Sons. Petitioner thereupon began operating the agency as a branch of his St. Louis employment agency business and has continued to operate it under the name of Bliss & Sons. Upon beginning operation of the Los Angeles branch the petitioner changed its operations from what they had been and concentrated on getting young men applicants who were college graduates and also attempted to operate a women's division therein. In addition to the foregoing activities during the years 1951 through 1957, the petitioner also was a member of Reserve Office *44 Force Company, a partnership composed of petitioner and Alex F. Barlows, which operated in St. Louis. The partnership engaged in the business of employment contractor of office help in which it sent its own employees out to work for others on temporary jobs. For an undisclosed portion of the period 1951 through 1957, the petitioner was a stockholder in Atlas Corporation which was engaged in the business of employment contractor of day-labor help in which it sent its own employees out to work for others by the day or other temporary period. Issue 1. Disallowance of a Portion of the Deduction Taken for Business Travel, Entertainment, Publicity, Promotion, and Promotional Entertainment for 1951 Through 1957 Findings of Fact In his income tax returns for 1951 through 1957, the petitioner took deductions for the purposes stated and in the amounts indicated in the following designated tabulation: Tabulation 1.
Deductions
1951
1952
1953
Travel and promotion
$6,418.69
$ 6,414.41
$ 6,334.41
Entertainment of customers
2,150.00
1,225.00
1,500.00
Total
$8,568.69
$ 7,639.41
$ 7,834.41
1954
1955
1956
1957
Promotion
$3,498.42
$ 9,904.95
$ 7,131.27
Travel
2,315.00
3,365.84
$ 4,564.39
14,721.96
Business publicity
15,029.06
27,004.39
Promotional entertainment
7,766.62
2,143.84
Total
$5,813.42
$13,270.79
$27,360.07
$51,001.46
The grand total of the foregoing totals is $121,488.25.
*45 In determining the deficiencies in controversy the respondent as to 1951, 1952, and 1953 held that petitioner had failed to substantiate any portion of the above-mentioned deductions taken for the respective years and as to 1954 through 1957 held that the petitioner had failed and refused to substantiate any portion of the above-mentioned deductions taken for the respective years or to establish that if expenditures had been made in the amounts deducted for the indicated purposes for 1951 through 1957, such expenditures constituted ordinary and necessary business expenses. Having so held, the respondent, applying the rule of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), determined that of the total set out in Tabulation 1 for the respective years, only the following amounts were deductible for such years: 1951
1952
1953
1954
1955
1956
1957
Total
$2,000
$2,000
$3,000
$2,000
$4,000
$7,500
$10,000
$30,500
The deductions shown in Tabulation 1 for travel and promotion for 1951, 1952, and 1953 were listed in petitioner's returns as expenses of his proprietorship business. However, the deductions shown in the tabulation *46 for entertainment of customers for those years were not so listed but were listed in the block designated "Miscellaneous" in that portion of the returns for itemizing deductions for expenditures by persons not using the tax table for computing their tax or by persons not taking the standard deduction. The deductions shown in Tabulation 1 for promotion for 1954, 1955, and 1957 were listed in petitioner's returns as expenses of his proprietorship business as were the deductions shown for travel for 1954 through 1957. In his income tax returns for the years 1951 through 1957 the petitioner reported income from Reserve Office Force Company, the partnership, of which he and Alex F. Barlows were the members. In a schedule attached to his return for 1956 the petitioner showed a computation of the net income of the partnership for that year and showed his distributive share thereof as $11,128.67. From the $11,128.67 was deducted $5,699.13 which was explained in the schedule as representing petitioner's individual expenses of $3,757.28 for business publicity and $1,941.85 for promotional entertainment incurred in earning partnership income, and the remainder, $5,429.54, was reported in the *47 return as petitioner's net income from the partnership for the year. In a schedule attached to his return for 1957 the petitioner showed a computation of the net income of the partnership for that year and showed his distributive share thereof as $14,789.39. From that amount was deducted $8,894.93 which was explained in the schedule as representing petitioner's individual expenses of $6,751.09 for business publicity and $2,143.84 for promotional entertainment incurred in earning partnership income and the remainder, $5,894.46, was reported as petitioner's net income from the partnership for the year. In his income tax return for 1956 the petitioner deducted as expenses of his proprietorship business the amount of $11,271.78 for business publicity and $5,824.77 for promotional entertainment and in his return for 1957 he deducted as expenses of his proprietorship business the amount of $20,253.30 for business publicity and $7,137.27 for promotion. With respect to the deductions involved in the instant issue, the parties have placed in evidence by the amended stipulation a schedule reflecting for the taxable years 1951 through 1957 numerous amounts paid by petitioner and deducted by *48 him in his income tax returns for the respective years, the dates on checks issued or cash used in payment of such amounts, the names of the payees of the amounts and, in most instances, a brief description of the items or purposes for which the amounts were paid. The totals of such amounts for the respective years are as follows: 1951
$ 5,011.22
1952
5,624.25
1953
4,905.46
1954
3,657.08
1955
7,994.14
1956
16,082.91
1957
29,684.68
The parties also have placed in evidence by the amended stipulation another schedule reflecting for the taxable years 1953 and 1955 through 1957 numerous amounts not shown on the schedule mentioned in the preceding paragraph paid by petitioner and deducted by him in his income tax returns for the respective years, the dates on the checks issued or cash used in payment of such amounts, the names of the payees of the amounts and a brief description of the items for which the amounts were paid. The schedule recites that the items shown thereon were distributed by petitioner during such years to employers, customers, and to his own employees. The totals of such amounts for the respective years are as follows: 1953
$ 332.36
1955
543.26
1956
2,209.57
1957
9,761.09
*49 The parties also have placed in evidence by the amended stipulation a third schedule reflecting for the taxable years 1951 through 1957 various amounts not shown in either of the two above-mentioned schedules, paid by petitioner and deducted by him in his income tax returns for the respective years, the dates on checks issued or cash used in payment of such amounts, the names of the payees of the amounts and a brief description of the items for which the amounts were paid which respondent concedes were proper deductions for the years taken. In making such concession respondent does not concede that such amounts are allowable in addition to the amounts allowed by him for such years in determining the deficiencies here involved. The totals of such amounts for the respective years are as follows: 1951
$ 112.00
1952
8.50
1953
2,497.51
1954
222.25
1955
2,724.26
1956
7,570.29
1957
3,445.10
By the amended stipulation the petitioner agrees that a deduction of $762.15 taken on account of a check dated October 26, 1957, was properly disallowed by respondent. On the basis of the foregoing three schedules and the agreement of the petitioner, mentioned in the *50 preceding paragraph, and since the petitioner has not shown the payment of any other amounts, the petitioner has established that he made expenditures of the following indicated amounts during the respective years and has included such amounts in the deductions set forth in Tabulation 1, supra: 1951
$ 5,123.22
1952
5,632.75
1953
7,735.33
1954
3,879.33
1955
11,261.66
1956
25,862.77
1957
43,653.02
Comparing the foregoing amounts with the totals of the deductions shown in Tabulation 1, supra, discloses that for the years 1951 through 1957 the petitioner has deducted the following amounts in excess of the total amounts shown by the amended stipulation to have been expended by him in the indicated years: 1951
$3,445.47
1952
2,006.66
1953
99.08
1954
1,934.19
1955
2,009.13
1956
1,497.30
1957
7,348.44
The following is a statement of petitioner's total gross income from the operation of his employment agency business for the years 1951 through 1957 as reported by petitioner in his income tax returns for the respective years: 1951
$134,198.20
1952
148,479.25
1953
239,405.16
1954
301,891.72
1955
281,212.64
1956
318,070.07
1957
398,207.51
*51 In his income tax returns for the respective years the petitioner showed the following amounts as paid by him for advertising and for salaries to his employees: Year
Advertising
Salaries
Total
1951
$19,558.68
$ 64,622.09
$ 84,180.77
1952
25,199.01
62,965.95
88,164.96
1953
52,539.48
102,034.16
154,573.64
1954
49,200.50
142,652.32
191,852.82
1955
50,379.73
107,546.50
157,926.23
1956
76,902.92
114,008.28
190,911.20
1957
72,361.95
131,567.83
203,929.78
During the years 1951 through 1957 it was the practice of the petitioner when with others always to pay the check for food and beverages and otherwise he also was a liberal and generous spender and giver. During those years it was not a general practice or custom of owners and operators of employment agencies in the St. Louis area to distribute as "give aways" to their employees and to customers and to employers, men's, women's, and children's clothing, rings, watches, and similar expensive items of jewelry. Nor was it the general practice of employment agencies in Los Angeles to do a "great deal" of promotional work. Opinion The petitioners contend that since they have shown that *52 during each of the years in question petitioner made expenditures in excess of the deduction allowed by respondent for such years and have submitted considerable evidence respecting the items and purposes for which the expenditures were made, we should find that for each of the years they were entitled to a deduction greater in amount than that allowed by respondent. On the other hand, the respondent takes the position that the petitioner was not entitled to a deduction for any year greater in amount than that allowed by respondent, except for 1956 as to which the respondent concedes that the deduction allowed by him should be increased by $70.29. We have found as set out in our findings that petitioner, with respect to the items involved in this issue, deducted in his income tax returns for the respective years the total amounts shown below in (a), that with respect to the deductions so taken, the petitioner has established expenditures made for the respective years in the total amounts shown below in (b), that with respect to the deductions so taken, petitioner has failed to establish that he made expenditures for the respective years in the total amounts shown below in (c), and *53 that because of the failure of the petitioners to establish that greater portions of the amounts so deducted represented ordinary and necessary business expenses of the petitioner, the respondent, under the Cohan rule, allowed as deductions for the respective years the amounts shown below in (d): 1951
1952
1953
1954
1955
1956
1957
(a)
$8,568.69
$7,639.41
$7,834.41
$5,813.42
$13,270.79
$27,360.07
$51,001.46
(b)
5,123.22
5,632.75
7,735.33
3,879.33
11,261.66
25,862.77
43,653.02
(c)
3,445.47
2,006.66
99.08
1,934.19
2,009.13
1,497.30
7,348.44
(d)
2,000.00
2,000.00
3,000.00
2,000.00
4,000.00
7,500.00
10,000.00
Obviously the petitioners were not entitled to the allowance of the portions of the deductions taken for which they have failed to establish expenditures therefor and as we understand their position they do not contend otherwise. To the extent the amount of expenditures for the respective years exceeded the amount allowed by respondent, the petitioners had the burden of showing that such excess constituted ordinary *54 and necessary business expense. The respondent has conceded in the amended stipulation that certain items and amounts were proper deductions for the respective years. However, the respondent did not concede that such amounts were allowable in addition to the amounts allowed by him for those years. For only one year, 1956, does the total amount conceded by respondent equal or exceed the amount allowed by him. The amount conceded for 1956 is $7,570.29 whereas the amount allowed was $7,500. As a consequence the petitioners' burden as to 1956 was to show that expenditures in excess of $7,570.29 were deductible. The expenditures shown to have been made by petitioner during the years in issue and as to which petitioners had the burden of showing that they were deductible involve more than 300 amounts for possibly 2,000 or more items of merchandise and for other purposes. With limited exceptions the expenditures were made in payment of numerous bills from hotels in St. Louis for food and beverages furnished the petitioner, bills incurred by petitioner at hotels in Kansas City, Missouri, Chicago, New York City, Los Angeles, California, and Phoenix, Arizona, bills incurred by petitioner *55 for hundreds of items of men's, women's, and children's clothing and shoes, men's and women's jewelry, including rings and watches, and bills for other merchandise. Although the record discloses that the petitioner was a liberal spender and generous giver, it does not disclose that he currently maintained records reflecting the persons upon whom he bestowed his generosity and the extent, if any, such bestowal was related to his employment agency business. In the absence of such records and in the absence of any testimony from him, the petitioner has submitted to us testimony of employees and former employees of his as well as testimony of others respecting the expenditures. Such witnesses, having been without records or other data of their own as to the matters involved, had only their memories to rely on respecting events and matters occurring during a period of from 3 to 10 years prior to the trial herein. As a result, with limited exceptions, such testimony was general and conclusory in nature and does not enable us to determine with certainty that numerous of the expenditures in controversy *56 bore a proximate relationship to the carrying on of petitioner's employment agency business as is requisite for a determination that they were ordinary and necessary expenses of that business and were deductible as such in a given year or years. Respecting the expenditures made in payment of bills incurred by petitioner at St. Louis hotels, the testimony of witnesses for the petitioner is to the effect that petitioner during the respective years entertained some of his employees at luncheon and entertained at luncheon, dinner, and other times some employers who patronized his employment agency and some other business men. Testimony of a witness for the respondent is to the effect that, during 1951 and until about October 1952 the petitioner, at St. Louis hotels, entertained his fiancee two or three times a week for luncheon, four or five times a week for dinner, and at other times for drinks and that possibly on such occasions two or three times a month business acquaintances of petitioner from out of town were present. As was pointed out in Challenge Manufacturing Co., 37 T.C. 650 (1962), *57 it is entirely normal for friendships to develop with some of those that a taxpayer meets in business transactions and for a social relationship to result because the taxpayer finds them congenial and companionable. As was further pointed out the mere fact that such persons may have been "business contacts" as well does not render the costs of their entertainment deductible as a business expense by the taxpayer if the entertainment in fact was furnished by him primarily for social or personal reasons. The possible fact that some of the persons a taxpayer entertained may have been helpful to him in some circumstances hardly establishes that they were entertained solely for business reasons or that their entertainment was in any significant way responsible for any benefits accruing to the taxpayer. Examining the evidence relating to petitioner's entertainment at the St. Louis hotels in the light of what was said in Challenge Manufacturing Co., supra, it is our opinion that some portion of petitioner's expenditures therefor during the years in issue constituted deductible business expenses, but the record fails to provide a basis for determining any specific amount therefor. *58 The record fails to show the relationship, proximate or otherwise, of the Kansas City hotel bills to petitioner's employment agency business. On occasions, when in Chicago, the petitioner often visited the offices of employment agencies whose owners or operators he knew to "explore business" and entertained some of his friends and acquaintances. On one or more occasions petitioner investigated businesses in Chicago which were for sale. During a portion of 1954 the petitioner operated an employment agency in Chicago which he closed near the end of the year. Thereafter, and until possibly some time in 1956, he and a Chicago employment agency had an arrangement between them whereby they exchanged male applicants. In each of the years 1953 and 1955 the petitioner attended an employment agency convention in Chicago. With two exceptions, the petitioner's wife Marian accompanied him on all trips to Chicago from 1952 through 1957 and assisted him in the entertaining he did on such trips. In 1955 the petitioner and Marian made a trip to New York City where they met and entertained some people who were engaged in the employment agency business there. The trip was made by the petitioner to *59 investigate conditions in the New York City area with respect to the employment agency business and the laws under which such business was conducted in order to determine whether he desired to enter business in that area. In each of the years 1954 and 1956 the petitioner, accompanied by Marian, made a trip to Los Angeles. On these trips the petitioner investigated conditions in the Los Angeles area respecting the employment agency business and the laws under which such business was conducted in order to determine if he desired to enter business in that area. Expenditures made in investigating a potential new trade or business and preparatory to entering therein are not deductible as ordinary or necessary expenses incurred in carrying on a trade or business. Eugene H. Walet, Jr., 31 T.C. 461 (1958), affd. 272 F. 2d 694 (C.A. 5, 1960). As a consequence the hotel and restaurant expenses incurred by petitioner on his trip to New York City in 1955 and to Los Angeles in 1954 and 1956 were not deductible. In view of what was said in Challenge Manufacturing Co., supra, *60 and since we are unable to find that Marian's services on the petitioner's trips to Chicago were other than assisting the petitioner to entertain, we are unable to find that the undisclosed portion of petitioner's bills from hotels in that city which related to Marian and which related to entertainment constituted allowable deductions. As the record stands, only the undisclosed portions of the bills which related to the petitioner when he attended employment agency conventions in 1953 and 1955 and when he attended to his employment agency business in Chicago in 1954 and the business of interchanging applicants in 1955 constituted allowable deductions. The petitioner acquired the Los Angeles branch of his employment agency business in June 1957 and thereupon began operating it. The record is silent as to the number of trips he made from St. Louis to Los Angeles during 1957 prior to beginning employment agency business there in June of that year. However, the record shows payment early in May 1957 of hotel and club bills incurred by him in Los Angeles for meals and lodging. In the absence of evidence to the contrary we conclude that such *61 bills were incurred at a time or times when he was negotiating the acquisition of the Los Angeles branch, that the amounts thereof represented capital expenditures and were not deductible as ordinary and necessary business expenses. During the months of June, July, August, November, and December 1957, the petitioner incurred bills at hotels, clubs, and restaurants in Los Angeles. An undisclosed portion of the bills was for the petitioner's entertainment at such hotels, clubs, and restaurants of employers in the Los Angeles area and their personnel employees in an attempt to interest them in using petitioner's Los Angeles branch to obtain their requirements for new employees. An undisclosed portion of the bills was for the expenses of Marian and petitioner and their 4-year old daughter who lived with the petitioner at a Los Angeles hotel from November 14 through December 31, 1957. During that period Marian regularly worked full time each business day as a counselor in the office of the Los Angeles branch and petitioner attended to the business of the branch. Another undisclosed portion of the bills was for the entertainment on two *62 occasions of about 20 persons consisting of the owner of the Top Pics Employment Agency, a competitive Los Angeles agency, and his staff and the staff of the petitioner's Los Angeles branch. During the period in which the foregoing entertainment occurred the petitioner was negotiating with the owner of Top Pics agency for its purchase. The record is silent as to when such negotiations terminated and the result thereof. Another undisclosed portion of the bills was for the entertainment of five or six occasions of the manager and staff of the Star Employment Agency, another competitive Los Angeles employment agency, and the staff of the petitioner's Los Angeles branch. At an undisclosed subsequent time the Star agency discontinued business in Los Angeles. In view of what was said in Challenge Manufacturing Co., supra, there does not appear to have been any substantial basis to support the deductibility as ordinary and necessary business expenses of the expenses incurred by petitioner in the repetitious entertainment of the owner and staff of the Top Pics agency and the manager and staff of the Star Employment Agency. Doubtless, as the evidence indicates, employment agency *63 business and problems were discussed by all present on each of the occasions but such could have normally occurred where the entertainment primarily was for social or personal reasons. Doubtless a portion of the hotel, club, and restaurant bills in issue constituted deductible business expenses, but the petitioner has not provided us with a segregation thereof nor with a basis for making a segregation. The National Association of Employment Agencies of which petitioner was a member and a director held its annual convention in Phoenix, Arizona, on November 11 through 14, 1957. On their trip from St. Louis to Los Angeles, the petitioner, Marian, and their 4-year old daughter stopped in Phoenix and attended the convention. While there the petitioner incurred a bill at a Phoenix hotel for meals and lodging for himself, Marian, and their daughter. Petitioner issued a check dated December 31, 1957, drawn payable to the hotel in payment of the bill. The bill in payment for which the check was issued was stamped by the hotel "Paid 1/25/58." Relying on Estate of Modie J. Spiegel, 12 T.C. 524 (1949), and Commissioner v. Bradley, 56 F. 2d 728 (C.A. 6, 1932), affirming *64 19 B.T.A. 49 (1930), the petitioners contend that by the issuance of the check the hotel bill was paid in 1957 and the amount thereof constituted a deductible business expense for that year. The respondent contends to the contrary. In the foregoing cases relied on by petitioners the evidence showed that the checks in question actually were delivered to the payees in the years of issuance, and it was held that the amounts represented by the checks were to be regarded as actually having been paid in those years. In Witt's Estate v. Fahs, 160 F. Supp. 521 (1956), it was held that, where a check dated December 31, 1946, was on that date with a letter of transmittal placed in an envelope properly addressed to the payee, then placed in the United States mails, and received by the payee on January 4, 1947, the mailing date of the check, December 31, 1946, was to be regarded as the date of payment of a contribution. Here we are without any information as to the date when the check in question was delivered to the hotel, or if mailed to the hotel, as to the date when mailed. Smith's Estate v. Commissioner, 208 F. 2d 349 (C.A. 3, 1953), affirming *65 a Memorandum Opinion of this Court on this point, involved the question of whether a payment was to be regarded as having been made in 1947 where the taxpayer issued a check dated December 16, 1947, drawn payable to the payee who cashed it on January 10, 1949. In holding that the payment in question was not made in 1947, the Court of Appeals said: If this instrument [check] had in fact been delivered in 1947, that fact was one capable of proof by the taxpayer or his representative. We think it would be an undesirable tax rule to let the mere date on an instrument, in the absence of showing of the time it was delivered, carry with it a conclusion that the instrument was delivered on the date put upon it by the drawer. Although recognizing that the period between December 31, 1957, and January 25, 1958, here involved, is considerably less than that between December 16, 1947, and January 10, 1949, we nevertheless think the above-quoted statement of the Court of Appeals is applicable here and accordingly conclude that the hotel bill in question was not paid in 1957 and that the amount thereof *66 was not properly deductible for that year. As shown by our findings, $5,699.13 of the total deductions taken for 1956 represented deductions taken by petitioner for that year for business publicity and promotional entertainment incurred by him, individually, with respect to Reserve Office Force Company, the partnership of which he and Barlows were the members. Our findings also show that $8,894.93 of the total deductions taken for 1957 represented deductions taken by petitioner for that year for business publicity and promotional entertainment incurred by him, individually, with respect to the partnership. The general rule is well settled that business expenses of a partnership are not deductible by particular partners in their individual income tax returns except where there is an agreement between the partners that such expenses shall be borne by particular partners out of their own funds. Robert J. Wallendal, 31 T.C. 1249 (1959). The petitioner was sick at the time of the trial herein and did not appear. Nor was any testimony of his offered by way of deposition or otherwise. *67 Neither the partnership agreement nor a copy thereof was offered in evidence. Although Barlows appeared at the trial and testified as a witness in behalf of petitioner, he was not asked to give nor did he give any testimony respecting the terms of the partnership agreement. Since the record fails to show that the petitioner was within the above-stated exception to the general rule, it follows that petitioner was not entitled to take any deductions in his income tax returns for entertainment expenses incurred by him in behalf of the partnership. With respect to expenditures deducted for merchandise distributed by petitioner and in controversy herein, the record shows that some of the more expensive and some of the lesser expensive articles were distributed to employers who had used the petitioner's employment agency to obtain employees. However, not all of such articles are shown to have been so distributed. Some of the less expensive articles were distributed to applicants who had registered with petitioner's agency and some of the least expensive articles were distributed to prospective applicants. To the extent determinable from the record, it appears that by far the greater portion *68 of the merchandise, including some of the more expensive items, was distributed by petitioner to his employees. In addition to regularly distributing a number of articles of merchandise to his employees on their birthdays, a number of articles on their wedding anniversaries, and a number of articles at Christmas, the petitioner made distributions of a number of articles to them on various other occasions during the respective years. On some of such occasions a number of the women employees received as many as eight dresses at one time. When women counselors left the petitioner's employment for maternity reasons, they were given maternity items, and at least on one occasion one of them was given a complete layette. Barlows, the petitioner's partner in Reserve Office Force Company, stated that on one occasion the petitioner gave him a fur, that on each of two of his birthdays the petitioners gave him two pairs of shoes, and that petitioner also made gifts of merchandise to employees of the partnership office on their birthdays and at Christmas. The rule of the Wallendal case heretofore mentioned, which prevented the allowance of any deductions taken by petitioner for expenditures made *69 by him for entertainment in behalf of the partnership is equally applicable to expenditures for merchandise distributed by him to Barlows and the partnership employees and bars the allowance of any deduction taken by him for merchandise so distributed. In addition to showing that undisclosed amounts of merchandise were distributed to the office force of the partnership, the record also indicates that an undisclosed amount of merchandise was distributed after 1955 to the office force of "Manpower," a company in which the petitioner had an interest of an undisclosed nature. In the absence of evidence to warrant the contrary, we conclude that no amount is allowable as a deduction by petitioner for merchandise distributed to Manpower's employees. As indicated above, it appears that by far the greater part of the merchandise was distributed to petitioner's employees. In this connection we note that the number of petitioner's employees during the respective years is not shown, that substantial sums were deducted by petitioner and, with a minor exception for the years 1951 through 1953, considered in another issue below, allowed to him for salaries for the years in question, and that the *70 record does not show, nor do petitioners contend, that the salaries paid were inadequate and that it was necessary for petitioner to make the distributions of merchandise to his employees throughout the respective years in order to provide reasonable compensation to them for their services. In such a situation we think the conclusion is inescapable that by far the greater portion of the expenditures in controversy made for merchandise distributed to petitioner's employees falls outside the classification of ordinary and necessary expenses incurred by petitioner in carrying on his employment agency business. Although we are of the opinion that a portion of the expenditures made by petitioner for merchandise which he distributed may have represented a deductible expense, we are not able to determine with a substantial degree of exactness the amount thereof. The petitioners contend that the increase in the business of the petitioner from 1951 through 1957 as shown by the increase in gross receipts of the business during that period resulted from very substantial expenditures by petitioner for entertainment, for merchandise distributed or "give aways" and other promotions and warrants *71 the conclusions that deductions of much larger amounts should be allowed with respect to this issue than those allowed by the respondent. The record shows that in the employment agency business newspaper advertising and direct mail advertising sent to employers constitute quite effective methods of promotion and that competent counselors also effectively aid in the promotion of business. The petitioner's gross income from his agency business in 1957 was approximately three times that for 1951, his advertising expense for 1957 was about three and one-half times that for 1951, and his expense for salaries in 1957 was more than twice that for 1951. From the foregoing it is apparent that the increases in advertising and salary expenses bore a close relationship to the increase in gross income. The total of the deductions taken by petitioner for 1957 and involved in this issue is approximately six times the total deducted for 1951. To hold as the contention of the petitioner implies, namely, that the increase in gross income resulted wholly from the expenditures involved in this issue superimposed on those made for advertising and salaries, would require a conclusion which is without support *72 in the record. Since no useful purpose would be served thereby, we have not attempted to enumerate and discuss in detail all of the hundreds of expenditures and the items or other purposes for which made. Instead we have considered and discussed the principal expenditures or classes of expenditures with respect to which evidence sufficient to warrant discussion was produced. In his opening statement at the trial, counsel for the petitioners frankly stated that, to an extent, the evidence to be produced by petitioners would be lacking in the identification, certainty, and definiteness required to establish that an expenditure constitutes an ordinary and necessary business expense. The record bears out the statement of counsel. In determining the deficiencies in issue the respondent applied the Cohan rule and allowed with respect to this issue deductions as set out in our findings. From a consideration of the record before us, we are of the opinion that it was proper for the respondent to apply the Cohan rule and we are unable to conclude that he erred in determining the amounts allowable under this issue for the respective years, except 1956 as to which he has conceded that a deduction *73 in the amount of $70.29 in excess of that allowed by him is allowable. As to 1956, we are unable to conclude that he erred in not determining that an amount greater than that so conceded was deductible. Issue 2. Disallowance of a Portion of the Deductions Taken for Automobile Expense and Depreciation of Automobiles for 1951 through 1957 Opinion In his income tax returns for the years 1951 through 1957 the petitioner took deductions for automobile expense and depreciation of automobiles in the amounts shown as (a) in the following tabulation, the respondent disallowed the deductions in the amounts shown in (b) of the tabulation, and in the amended stipulation filed after the trial the petitioners agreed that the amounts disallowed by respondent were properly disallowed to the extent shown in (c) of the tabulation: (a)
(b)
(c)
1951
$1,420.94
$1,065.70
$ 532.85
1952
1,605.48
1,204.11
602.05
1953
2,088.10
1,566.07
783.03
1954
2,769.65
2,077.24
1,038.62
1955
2,879.90
2,159.92
1,079.96
1956
4,268.82
3,201.62
1,600.81
1957
6,814.63
5,110.97
2,555.48
Since in each instance the amount disallowed by respondent exceeds the amount *74 which the petitioners conceded was properly disallowed, since petitioners have not submitted evidence to show that such excess also was not properly disallowed, and since the petitioners do not refer to the issue on brief, we conclude that they have abandoned it. Accordingly we sustain the respondent on this issue. Issue 3. Disallowance of a Portion of the Deductions Taken for Salaries for 1951 through 1953 Opinion In his income tax returns for the years 1951 through 1953 the petitioner took deductions for salary paid his former wife in the amounts shown as (a) in the following tabulation, the respondent disallowed the deductions in the amounts shown in (b) of the tabulation, and in the amended stipulation the petitioners agreed that the amounts disallowed by respondent were properly disallowed to the extent shown in (c) of the tabulation: (a)
(b)
(c)
1951
$3,600.00
$3,600.00
$1,270.00
1952
3,600.00
3,600.00
1,270.00
1953
693.55
693.55
400.00
In each instance the amount disallowed by respondent exceeds the amount which the petitioners conceded was *75 properly disallowed. Since petitioners have not submitted evidence to show that such excess also was not properly disallowed and since the petitioners do not refer to the issue on brief, we conclude that they have abandoned it. Consequently we sustain the respondent on this issue. Issue 4. Disallowance of a Portion of the Deduction Taken for Miscellaneous Office Expense for 1953 Opinion In his income tax return for 1953 the petitioner deducted for miscellaneous office expense $8,060.11. In determining the deficiency for 1953 the respondent disallowed $2,126.95 of the foregoing amount and in the notice of deficiency explained his action as follows: It is held that $2,126.95 of such amount is not an allowable deduction, because of your failure to substantiate the expenditure and establish that such expenditure, if made, was an ordinary and necessary business expense. Your income, therefore, is increased by the amount of $2,126.95. In their petition the petitioners assigned error as to the foregoing action of the respondent. In his answer the respondent denied the error assigned. The petitioners have not submitted any evidence directed to this issue and do not contend on *76 brief that the $2,126.95 in question constituted an ordinary and necessary business expense. Such being the situation, we conclude that the petitioners have abandoned the issue and accordingly sustain the respondent's action. Issue 5. Disallowance of a Portion of a Deduction Taken for Medical Expense for 1954 Opinion In his income tax return for 1954 the petitioner deducted $276.57 for medical expenses. In his determination of the deficiency for 1954 the respondent disallowed $235.72 of the deduction. The petitioners have not submitted any evidence directed to this issue and have not referred to it on brief. In this situation, we conclude that petitioners have abandoned the issue and we accordingly sustain the respondent's action subject to such change in the amount deductible as will result from the recomputation of the income of the petitioners under Rule 50. Issue 6. Disallowance of a Portion of a Deduction Taken for Loss on Sale of Automobiles Opinion In his income tax return for 1957 the petitioner deducted $186.23 as a loss sustained on the sale of certain automobiles shown as property other than capital assets. The respondent determined that the petitioner sustained *77 a deductible loss on the sale of the automobiles of $46.56 and disallowed the remainder of the deduction. No evidence directed to this issue was submitted by petitioner and statements made by petitioners on brief are to the effect that they have abandoned the issue. As a consequence the respondent's action here involved is sustained. Issue 13. Determination of Additions to Tax Findings of Fact On March 15, 1951, the petitioner filed with the collector for the first district of Missouri his declaration of estimated tax wherein his estimated income tax for 1951 was shown as $1,000. Thereafter, on December 17, 1951, he filed an amended declaration of estimated tax for 1951 in which he showed his 1950 income tax as $4,578 and showed his estimated income tax for 1951 as $6,000. On March 17, 1952, the petitioner filed with the above-mentioned collector his declaration of estimated tax for 1952 in which he showed his income tax for 1951 as $6,011.37 and his estimated income tax for 1952 as $4,000. Subsequently and on January 15, 1953, the petitioner filed an amended declaration of income tax for 1952. While the amended stipulation recites that a copy of the amended declaration of *78 tax for 1952 was attached as Exhibit 15-0, an examination of that exhibit discloses it to be a copy of the petitioner's amended declaration of estimated tax for 1951 mentioned in the preceding paragraph. As a result a copy of the petitioner's amended declaration of tax for 1952 is not in the record. On March 16, 1953, the petitioner filed with the director in St. Louis his declaration of estimated tax for 1953 in which he showed his income tax for 1952 as $13,928.80 and his estimated income tax for 1953 as $10,000. The respondent determined that petitioner, in his declarations of estimated tax for 1951, 1952, and 1953, substantially underestimated his income tax for those years and that accordingly for those years was liable for the addition to tax provided by section 294(d) (2) of the Internal Revenue Code of 1939. The respondent determined that a part, if not all, of the underpayment of the petitioners' income tax for each of the years 1954 through 1957 disclosed by the deficiencies determined by him for the respective years was due to negligence or intentional disregard of rules and regulations by the petitioners. Accordingly the respondent determined that for each of the *79 foregoing years the petitioners were liable for the addition to tax provided in section 6653(a) of the Internal Revenue Code of 1954. A part of the underpayment of income tax for each of the years 1954 through 1957 was due to negligence or intentional disregard of rules and regulations. Opinion The respondent has conceded certain issues involving 1951 and 1953. In view of that and the apparent mutual mistake of the parties with respect to the amended declaration of estimated tax of petitioner for 1952, a determination of the question as to whether the petitioner substantially underestimated his income tax for those years is dependent on a recomputation of tax liability under Rule 50. Accordingly such determination will be made upon a redetermination of tax liability under that rule. From our consideration of the record presented as to the years 1954 through 1957 we have concluded that a part of the underpayment in tax for each of those years was due to negligence or intentional disregard of rules and regulations and accordingly have so found as a fact. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: MADYO A. POLETTI, Docket No. 74753, and MADYO A. POLETTI and MARIAN POLETTI, Docket No. 83552.↩